THOMAS PRINTY, Administrator, Appellant, v. JOHN REIMBOLD, Appellee.

**NEGLIGENCE: Use of Premises—Lost Person as Invitee.** A traveler who loses his way and drives upon premises on the supposition that he is on a public highway, and consequently not for a purpose which has in view the mutual benefit of the traveler and the owner of the premises, *may not be deemed an invitee*, it appearing that the way over which the traveler passed never had been used and could not be used for general unrestricted travel by the public.

**NEW TRIAL: Grounds—Inadvertently Misleading Counsel.** The court may grant a new trial on the ground that it inadvertently misled counsel, prior to the argument, as to the nature of the instructions which would be given to the jury.

Headnote 1: 29 Cyc. p. 454 (Anno.)   Headnote 2: 29 Cyc. p. 791 (Anno.)

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

FEBRUARY 10, 1925.

SUPPLEMENTAL OPINION SEPTEMBER 29, 1925.

ACTION in the name of the administrator, to recover damages to the estate of his intestate. The verdict for plaintiff was set aside, and a new trial granted. From this ruling the plaintiff appeals.—*Affirmed.*

**B. F. Jones** and *Hollingsworth & Hollingsworth,* for appellant.

*O'Harra, Walker & Sheridan,* for appellee.

STEVENS, J.—I. This is an action to recover damages for the death of Mae Printy, appellant's intestate. The cause was tried to a jury, which returned a verdict for the plaintiff for the full amount asked. The motion of appellee for a new trial, based on numerous grounds, was overruled in all particulars except two: (a) That the court inadvertently misled counsel by statements as to what the instructions relative to the main question of law involved would be, before the arguments were made to the jury; and (b) error in the 13th paragraph of the charge to the jury, and the refusal to give a requested instruction.

1. NEGLIGENCE: use of premises: lost person as invitee.

Before entering upon a discussion of the legal questions involved, it is necessary that a detailed statement of the facts be made. The facts upon which our conclusions of law are based, are without substantial conflict or dispute.

On the evening of February 22, 1922, at the invitation of one Benjamin Miller, deceased, her sister, and a young man by the name of Howbert, went in a Ford coupé from Keokuk, Iowa, to Nauvoo, Illinois, a distance of some 15 miles, to attend a dance. The route pursued from Keokuk to Nauvoo was over the bridge which crosses the Mississippi River opposite the former place, and over a highway which follows the meanderings of the stream to Tenth Street in the latter city. The party left the dance about 2 o'clock on the morning of the 23d, in the same Ford coupé, to return over the same route to Keokuk.

Plats of the city of Nauvoo and of the route traveled by the

party after they left the dance, indicate that the streets which in-
tersect each other at right angles lie due north and south, and
east and west; but they are not so described in argument.

We gather from the record that the streets are laid out
somewhat with the river, which flows on three sides of the city.
Tenth Street, over which the party started to Keokuk, lies in a
northeasterly and southwesterly direction, and intersects with
the highway leading out of the city toward Keokuk, at a point
near the river. Instead of proceeding on Tenth Street to the
point of intersection with the highway, the driver of the car
turned to the right onto Parley Street, went two blocks north
thereon, and proceeded in a northwesterly direction along said
street in the direction of the Mississippi River. At a point a
few hundred feet distant from the river, the road angled to the
left, and approached the river nearly at right angles, and ap-
proximately due west. A short distance farther west, the road
turns to the left and to the southeast along the river, for a dis-
tance of about two blocks, and then follows one of the streets of
the city, intersecting with Tenth Street about one block below
the street on which the car turned into Parley Street. Instead
of turning to the left, and following the highway described
above, the driver of the car continued west along a private road
leading to a dock or ferry landing owned by appellee. Before
reaching the dock, the road turned by a gradual curve slightly
toward the southeast.

Without discovery of their peril, the car was driven upon
the dock and precipitated into the river, which, at the point
where the car landed, was about 10 feet in depth. Miller suc-
ceeded in breaking the glass in one of the doors of the car,
through which he crawled out, and reached the shore. The other
occupants of the car were drowned.

Photographs of the highway and of the wharf and surround-
ings were introduced in evidence by both parties. Measurements
were also taken, showing the distances between important points.

The highway east of the point where it intersects with the
road which turns southeast along the river, is about 26 feet in
width; but, as it approaches somewhat nearer the dock, it has
the appearance of being expanded to a considerably greater
width, extending to the river. Almost directly in the center of

the highway, as the car approached the river from the east, there was a telephone pole, and a small shed or tool house, against which some lumber was piled.

The car, in reaching the wharf, had to pass around the telephone pole and the shed, near to the river bank. The highway described above, turned to the left before the telephone pole and shed were reached. The distance from the shed to the river is shown by the testimony to be 11 or 12 feet. To the right, as the car proceeded west, and somewhat to the east of the shed and near the bank, there was a launch with a white top, elevated upon barrels and other material. The car, in reaching the dock, had to pass by the launch and within a very few feet of it, and around the telephone pole and shed. The ground in the vicinity described is, we gather, approximately level. The road leading around the telephone pole and shed to the dock is made of cinders, and is owned and maintained by appellee, and used by travelers taking and leaving the ferry, which crosses the river to Montrose, on the Iowa side.

There appears to have been a beaten track around the pole and shed, the route followed by the car to the dock. The distance from the shed to the opposite side of the highway, which the driver should have taken, is about 26 feet. Miller testified that, as he approached the dock, the lights of his car were thrown upward by a depression in the road, and that he did not discover the peril until the car went upon some planking near the dock, when he saw the water in the river. Miller further testified that, when he arrived at the dock, before he discovered that they were in a place of danger, he thought the car was going upon a small bridge or culvert at the intersection of Tenth Street with the highway leading in the direction of Keokuk, and that a portion of the bridge or culvert had been washed out.

It is conceded that there were no lights or barriers in the vicinity of the dock, or other warnings or barricades of any kind to prevent a traveler upon the highway from approaching the dock in the manner already indicated.

The explanation offered by Miller for turning from Tenth into Parley Street, and to the point where the car went into the river, was that he thought he was on the right road to Keokuk.

He evidently became confused as to direction. He had little familiarity with the streets of Nauvoo, but testified that he re membered that there was a turn in the road at or near the cul- vert at the lower end of Tenth Street.

Appellee requested the court to instruct the jury that, if it found from the evidence that appellee owned the dock and wharf in question, and was in possession thereof, then, when

2. NEW TRIAL: grounds: inadvertently misleading counsel. deceased and her companions went thereon, they became trespassers, and appellee owed them no duty except that of not willfully or wantonly injuring them. The instruction was, by the court, marked ''refused.''

In his motion for a new trial, appellee set up, as one of the grounds thereof, that the court informed his attorney that the requested instruction, or one of like import, would be given, and that, in reliance thereon, the cause was argued to the jury upon that theory. This was one of the grounds on which the motion was sustained.

The court, in granting new trial, is clothed with a large discretion; and unless it appears that such discretion was abused, the ruling will not be disturbed. We are not disposed to interfere with its ruling in this instance. The first ground upon which the motion was sustained, appealed peculiarly to the court's discretion, and we are not disposed to disturb the ruling. In view of our conclusion upon the other proposition decided, that the judgment must be affirmed, we need not further discuss this point.

II. The order of the court overruling all of the other grounds of the motion, except as indicated above, narrows the remaining questions to be passed upon by us to such as arise out of the alleged error in the giving of Paragraph 13 of the instructions to the jury.

The petition alleged various and numerous acts of negligence, all of which were submitted to the jury without formal challenge by appellee to the instructions in relation thereto. At least, the record does not disclose that formal exceptions were preserved to any of the court's instructions to the jury, except Paragraph 13.

This instruction, in substance, advised the jury that the

owner or occupier of real property is under no obligation to make the same safe, or to maintain it in any particular condition for the benefit of trespassers, intruders, mere volunteers, or licensees, going thereon without his invitation, express or implied; but further informed the jury that, if such owner or occupier expressly or impliedly invites the public or any particular member thereof to come upon his premises, he assumes the duty toward them of exercising reasonable care to see that same are free from dangerous obstructions, pitfalls, and the like, which may result in their injury. Proceeding further in this instruction, the court submitted to the jury the question as to whether, at the time the car was precipitated from the dock into the river, deceased was on the premises of appellee as an invitee.

The court did not, in ruling upon the motion for a new trial, indicate definitely his views upon the matters covered by the instruction in question, nor does it appear whether the motion was sustained because of error therein or because of the refusal to give the one requested by appellee; nor is this very material to the disposition of the case upon this appeal.

It is apparent that the question as to whether deceased went upon the premises of appellee as an invitee or in some other capacity will necessarily confront the court at the outset in the event of a retrial, and we are, therefore, disposed to settle the question, so far as it is before us,—that is, as to whether deceased was an invitee.

It is the universal rule that persons entering voluntarily upon the premises of another, out of idle curiosity or for their own pleasure or advantage, take the same as they find them, and the owner or occupier thereof is bound only to avoid wanton or willful injury to them; but, if the purpose of going upon the premises is the common interest, or for the mutual advantage of the parties, an implied invitation, which makes it the duty of the owner or occupier to maintain the same in a reasonably safe condition, may be inferred. *Keeran v. Spurgeon Merc. Co.,* 194 Iowa 1240; *Davis v. Malvern L. & P. Co.,* 186 Iowa 884; *Noyes v. Des Moines Club,* 178 Iowa 815; *St. Louis & S. F. R. Co. v. Stacy,* 77 Okla. 165 (171 Pac. 870) ; *Spain v. St. Louis & S. F. R. Co.* (Mo. App.), 190 S. W. 358; *Southern R. Co. v. Bates,*

194 Ala. 78 (L. R. A. 1916-A 510) ; *Glaser v. Rothschild,* 221 Mo. 180 (120 S. W. 1) ; *Turess v. New York S. & W. R. Co.,* 61 N. J. 314 (40 Atl. 614) ; *Lawrence v. Kaul Lbr. Co.,* 171 Ala. 300 (55 So. 111) ; *Plummer v. Dill,* 156 Mass. 426 (31 N. E. 128) ; *Mandeville Mills v. Dale,* 2 Ga. App. 607 (58 S. E. 1060) ; *Foster Lbr. Co. v. Rodgers* (Tex. Civ. App.), 184 S. W. 761.

To the above, under some circumstances, may be added acts, conduct, and the acquiescence of the owner in the use of his premises by the public. The cases cited above contain an extensive review of other authorities, and illustrate the application of the doctrine of implied invitation to a great variety of circumstances; and we shall not attempt an extensive review of them.

The question involved in *Keeran v. Spurgeon Merc. Co.,* supra, involved the alleged liability of a merchant to the plaintiff, who entered the store for the purpose of leaving his overcoat, and who was injured when he returned for it, at a place in the building not used for serving customers. We held that, as he went there for his own personal advantage, and not to transact business with the proprietor, he was not an invitee, and could not recover. The case is in point here.

It is perfectly apparent from the record that neither the driver of the car in question nor deceased went upon the premises of appellee for the common interest or mutual advantage of themselves and appellee. We gather from the record that the ferry boat was tied up for the winter; and in any event, the deceased had no intention of crossing the river thereon. The plain and simple fact is that they were lost, and were several blocks from the point they sought to reach. The presence of the road leading from the main highway to the wharf offered an opportunity for the parties to traverse it, and made it possible for them to reach the dock, with the consequences stated.

The case, in our opinion, presents no facts upon which it can be held that deceased went upon the premises as an invitee. The only cases cited by appellant even apparently in conflict with this conclusion are *Tomle v. Hampton,* 129 Ill. 379 (21 N. E. 800) ; *Crogan v. Schiele,* 53 Conn. 186 (1 Atl. 899) ; *Hydraulic Works Co. v. Orr,* 83 Pa. St. 332; and possibly *Jones v. Nolan,* 120 Ga. 588 (48 S. E. 166). A careful examination of

these cases will disclose quite clearly that the decision in each of them, except in the Pennsylvania case, is based upon familiar rules in no wise inconsistent with the doctrine of the cases cited supra. In so far as they bear upon other issues tendered in the court below, we have no occasion at this time to discuss them. It is our conclusion that the giving of Instruction 13 was error, and that the motion for a new trial was properly sustained because thereof.

III. Other alleged grounds of negligence are urged by counsel for appellant in argument, but they are not involved upon this appeal.

The question as to whether deceased was a trespasser, in a legal or technical sense, we shall not undertake to determine. The motion for a new trial, as already stated, was overruled upon all but the two grounds stated. The question as to whether appellee was required to barricade the private road leading from the highway to the wharf, or to maintain lights or other warning at or near the point in question, we shall, in view of a possible retrial, leave open. What we might say on the question of appellee's duty or his alleged failure to perform it would be mere dictum, from which we deem it best to refrain.

It is our conclusion that the order granting a new trial should be sustained.—*Affirmed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.

### SUPPLEMENTAL OPINION.

Counsel for appellant, in a petition for rehearing, vigorously argue in support of the contention urged in their briefs upon the original submission of this case, that deceased met her death while on the premises of appellee as an invitee. It is conceded that she was not an invitee within the general doctrine that one going upon the premises of another for their mutual advantage is an invitee, but it is contended that the facts of this case bring it within the class of cases in which the defendant by his conduct has allured or induced a party to use a private way in the belief that it is open for the use of the public, thereby imposing the duty upon him of maintaining the same in a reasonably safe condition. The doctrine, as stated, is famil-

iar, and has been recognized and applied in numerous cases in this state. *Ambroz v. Cedar Rapids Elec. L. & P. Co.,* 131 Iowa 336; *Connell v. Keokuk Elec. R. & P. Co.,* 131 Iowa 622; *Upp v. Darner,* 150 Iowa 403.

As stated in 3 Shearman & Redfield on The Law of Negligence (6th Ed.) 1855, Section 706, the doctrine is as follows:

"Invitation will also be implied from such long acquiescence as reasonably to give rise to the inference that it is invited, but it is not ordinarily to be inferred from mere passive acquiescence in what would otherwise be a trespass."

The private way or road in question is reached from the public highway near the river bank at the extreme right or lower corner, some distance from where the travel turns to the southeast. It is very short, and lies within a few feet of the river bank on the right, approaching the river, and an old shed and telephone pole and pile of lumber on the left.

A traveler upon the highway approaching the river in the daytime has a clear view of the stream for a distance of at least 250 feet, and at a distance of 100 feet, an extensive view up and down the stream. The view of the river is enlarged as it is approached. The road in question never had been, nor could it be, used by the public for any other purpose than that for which it was designed: that is, to reach the ferry. There could not, therefore, have been such acquiescence in the use thereof by the public for any other purpose as to give rise to an implied invitation to use it. It led only to the dock near by, and, under ordinary circumstances, no one could possibly be misled by it. The view of the river was unobstructed. The driver of the car did not enter upon this road because he had been led to believe it was a public way by any act of appellant's. He was lost, and went thereon without knowing where he was. Appellant did not maintain an excavation or other dangerous place in the road or the private way. The only danger to be apprehended, if any, was that a traveler in the nighttime who was unfamiliar with the road and surroundings might drive off the highway and to the dock, which was unprotected. All of the cases cited by appellant, and all that we have been able to find in which the liability of the owner was sustained on the theory of counsel, are cases in which there was a clearly implied invitation to the

public to use a private way, arising either out of long acquiescence in the use by the public thereof, or in which the highway and the private premises were so connected and improved as to make it impossible to distinguish the line of demarcation between them. As stated, there was, and could have been, no acquiescence upon the part of appellee in the use of the way in question by the public. It did not and could not use it for a public purpose. We need not review the cases cited by appellant or distinguish them in detail. They are clearly distinguished from the present case by the facts. No cases called to our attention are more favorable to appellant than the following, none of which, in our judgment, sustain liability in this case on the theory that deceased was an invitee. *Plummer v. Dill,* 156 Mass. 426 (31 N. E. 128); *Sweeny v. Old Colony & Newport R. Co.,* 92 Mass. 368; *Carleton v. Franconia Iron & Steel Co.,* 99 Mass. 216; *Oliver v. City of Worcester,* 102 Mass. 489; *Davis v. Central Cong. Soc.,* 129 Mass. 367; *Murphy v. Boston & Albany R. Co.,* 133 Mass. 121; *Hydraulic Works Co. v. Orr,* 83 Pa. St. 332; *Barry v. New York Cent. & H. R. R. Co.,* 92 N. Y. 289; *Lawson v. Shreveport Waterworks Co.,* 111 La. 73 (35 So. 390); *Low v. Grand Trunk R. Co.,* 72 Me. 313; *Pomponio v. New York, N. H. & H. R. Co.,* 66 Conn. 528 (34 Atl. 491); *DeTarr v. Ferd. Heim Brewing Co.,* 62 Kan. 188 (61 Pac. 689); *Tomle v. Hampton,* 129 Ill. 379 (21 N. E. 800); *Mellen v. Morrill,* 126 Mass. 545; *Holmes v. Drew,* 151 Mass. 578 (25 N. E. 22); *Crogan v. Schiele,* 53 Conn. 186 (1 Atl. 899); *Minneapolis Mill Co. v. Wheeler,* 31 Minn. 121 (16 N. W. 698); *Chesapeake & O. R. Co. v. Jennings,* 98 Va. 70 (34 S. E. 986); *Cavanagh v. Block,* 192 Mass. 63 (77 N. E. 1027); *Campbell v. Boyd,* 88 N. C. 129 (43 Am. Rep. 740); *Lepnick v. Gaddis,* 72 Miss. 200 (16 So. 213).

In the following cases, which further illustrate the application of the doctrine, liability was denied. The cases serve only to illustrate the application of the rule to particular fact situations. *Howland v. Vincent,* 10 Metc. (Mass.) 371; *Walsh v. Fitchburg R. Co.,* 145 N. Y. 301 (39 N. E. 1068); *Ryan v. Towar,* 128 Mich. 463 (87 N. W. 644); *Rome Furnace Co. v. Patterson,* 120 Ga. 521 (48 S. E. 166).

Whether appellant was negligent in failing to barricade the entrance to the dock or to give some kind of warning to trav-

elers upon some other theory upon which he owed a duty to the
public, we have no occasion to determine. The court refused to
instruct the jury that deceased was a trespasser. The request
for an instruction on this point was on behalf of appellee. The
appeal is from the ruling of the court sustaining defendant's
motion for a new trial. The court submitted to the jury the
question as to whether deceased was an invitee. What we held
is that, on the facts disclosed by the record before us, this was
error. Whether the situation created by the intersection of the
road in question with the public highway was of such a nature,
by reason of the proximity of the river, as to endanger travelers
upon the public highway, is in no manner involved. A re-
examination of the authorities serves only to strengthen our
view that the conclusion heretofore reached is sound. The only
invitation in any way extended to the public by appellee to use
the private way in question was for the mutual advantage of the
public and himself. The following cases, some of which are
cited by appellant, afford us no aid in passing upon the ques-
tion as to whether deceased was an invitee, but they bear upon
another angle of the question sometimes arising. *Beck v. Car-
ter*, 68 N. Y. 283; *Hardcastle v. South Yorkshire R. Co.*, 4 Hurl.
& Nor. 67; *Corby v. Hill*, 4 C. B. (N. S.) 556; *Hounsell v. Smyth*,
7 C. B. (N. S.) 731; *Vanderbeck v. Hendry*, 34 N. J. Law 467;
*City of Norwich v. Breed*, 30 Conn. 535.

The petition for rehearing is overruled.